Dear Ms. Menendez:
You have asked substantially the following question:
Does the use of a construction manager at risk or program manager at risk contract for the design and construction of a multi-phase project comply with section 287.055(9)(c), Florida Statutes, when each phase of the project is separately negotiated for a guaranteed maximum price and completion date?
You state that the city entered into a utility expansion project in the early 1990's, using a design-bid-build approach which, due to disputes with the contractors, resulted in the city paying out an additional $14,250,000 over the amount of the initial bids. The city subsequently chose a "construction manager at risk" method whereby the city contracts with a single entity to provide design and construction management services, coupled with multi-phase guaranteed maximum prices and guaranteed completion dates for each phase. The city entered into such a contract beginning in 1999 for a term of five years, with five different expansion phases.
Due to the size, geographic locations and uncertain design requirements of the phases, the city determined that it was impractical to establish a guaranteed maximum price for the project at the time the contract was initially entered into. Rather, each phase was divided into three "tiers" which were individually negotiated. The construction manager's compensation for Tier One services was based on an hourly rate negotiated at the outset and incorporated into the agreement. Compensation for Tier Two services was also negotiated at contract inception and established based on a guaranteed maximum price agreed to by the parties. *Page 3 
Finally, Tier Three compensation was negotiated by the parties when the city was ready to commence the next phase of the project.
You indicate that this allowed the city flexibility in choosing the compensation for each phase based on a number of different methods: guaranteed maximum price; lump sum fixed price; cost of work plus a designated design fee and/or construction fee; or cost of work plus a designated design and/or construction fee subject to a guaranteed maximum price. Under this system, the construction manager was required to solicit competitive bids from pre-qualified subcontractors, then negotiate the compensation with the city.
In late 2005, early 2006, the Auditor General for the State of Florida conducted an operational audit of the city's water, sewer and stormwater operations. The auditor's report included a finding that the city did not fully comply with the provisions of section 287.055, Florida Statutes, the Consultants' Competitive Negotiation Act, when it negotiated contracts for the expansion of the utility system. Specifically, the report cites that the city executed two contracts without first negotiating fair, competitive and reasonable compensation as required by the act, effectively precluding the city from negotiating contracts with lower ranked qualified firms if the compensation demands of the selected firm were excessive. The auditor also noted that the contracts did not establish a guaranteed maximum price or guaranteed completion date, contrary to section 287.055(9)(c), Florida Statutes.
Section 287.055, Florida Statutes, sets forth requirements for the procurement and contracting of professional architectural, engineering, landscape architectural, or land surveying services by governmental agencies.[1] Subsection (9)(c) of the act provides for the act's application to design-build contracts and pertinent to the award of such contracts by municipalities provides:
"Municipalities, political subdivisions, school districts, and school boards shall award design-build contracts by the use of a competitive proposal selection process as described in this subsection, or by the use of a qualifications-based selection process pursuant to subsections (3), (4), and (5) for entering into a contract whereby the selected firmwill subsequently establish a *Page 4 guaranteed maximum price and guaranteed completion date. If the procuring agency elects the option of qualifications-based selection, during the selection of the design-build firm the procuring agency shall employ or retain a licensed design professional appropriate to the project to serve as the agency's representative. Procedures for the use of a competitive proposal selection process must include as a minimum the following:
1. The preparation of a design criteria package for the design and construction of the public construction project.
2. The qualification and selection of no fewer than three design-build firms as the most qualified, based on the qualifications, availability, and past work of the firms, including the partners or members thereof.
3. The criteria, procedures, and standards for the evaluation of design-build contract proposals or bids, based on price, technical, and design aspects of the public construction project, weighted for the project.
4. The solicitation of competitive proposals, pursuant to a design criteria package, from those qualified design-build firms and the evaluation of the responses or bids submitted by those firms based on the evaluation criteria and procedures established prior to the solicitation of competitive proposals.
5. For consultation with the employed or retained design criteria professional concerning the evaluation of the responses or bids submitted by the design-build firms, the supervision or approval by the agency of the detailed working drawings of the project; and for evaluation of the compliance of the project construction with the design criteria package by the design criteria professional.
6. In the case of public emergencies, for the agency head to declare an emergency and authorize negotiations with the best qualified design-build firm available at that time." (e.s.)
The statute's plain language requires a firm selected by the qualification-based process in subsections (3), (4) and (5) of section287.055, Florida Statutes, to subsequently establish a guaranteed maximum price and a guaranteed completion date. While there is no definitive time frame for doing so, the statute does provide for competitive negotiations to begin after the firm is selected. Following the public announcement and qualification procedures in subsection (3) and the competitive selection steps in subsection (4), an agency is required by section *Page 5 287.055(5), Florida Statutes, to enter competitive negotiations with the selected firm as follows:
"(a) The agency shall negotiate a contract with the most qualified firm for professional services at compensation which the agency determines is fair, competitive, and reasonable. In making such determination, the agency shall conduct a detailed analysis of the cost of the professional services required in addition to considering their scope and complexity. For any lump-sum or cost-plus-a-fixed-fee professional service contract over the threshold amount provided in s.287.017 for CATEGORY FOUR, the agency shall require the firm receiving the award to execute a truth-in-negotiation certificate stating that wage rates and other factual unit costs supporting the compensation are accurate, complete, and current at the time of contracting. Any professional service contract under which such a certificate is required must contain a provision that the original contract price and any additions thereto will be adjusted to exclude any significant sums by which the agency determines the contract price was increased due to inaccurate, incomplete, or noncurrent wage rates and other factual unit costs. All such contract adjustments must be made within 1 year following the end of the contract.
(b) Should the agency be unable to negotiate a satisfactory contract with the firm considered to be the most qualified at a price the agency determines to be fair, competitive, and reasonable, negotiations with that firm must be formally terminated. The agency shall then undertake negotiations with the second most qualified firm. Failing accord with the second most qualified firm, the agency must terminate negotiations. The agency shall then undertake negotiations with the third most qualified firm.
(c) Should the agency be unable to negotiate a satisfactory contract with any of the selected firms, the agency shall select additional firms in the order of their competence and qualifications and continue negotiations in accordance with this subsection until an agreement is reached."
These procedures clearly indicate that compensation will be negotiated prior to the selected firm beginning work under the contract. As noted in Attorney General Opinion 93-56, the statute states that an "agency may request, accept, and consider proposals for the compensation to be paid under the contract only during competitive negotiations under subsection (5)."[2] Nothing in the act appears to contemplate the negotiation of a guaranteed maximum price *Page 6 
and guaranteed completion date of each phase of a multi-phase project that has been awarded to a construction manager at risk or program manager at risk.
Accordingly, it is my opinion that separately negotiating each phase of a multi-phase project that has been awarded to a construction manager at risk or program manager at risk does not comply with the plain language or intent of section 287.055(9)(c), Florida Statutes.
[1] See s. 287.055(2)(a) and (b), Fla. Stat.
[2] Section 287.055(4)(b), Fla. Stat. *Page 1